## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JORGE L. MEDINA** )<br>14167 S. Hawthorne Boulevard )<br>Hawthorne, California 90250 )<br> )<br>    Plaintiff, )<br> )<br>  **v.** )<br> )<br>**LORETTA LYNCH, Attorney General,** )<br>U.S. Department of Justice in her )<br>official capacity as well as her successors )<br>and assigns, )<br>950 Pennsylvania Avenue, N.W., )<br>Washington, D.C, 20530-0001 )<br> )<br>    Defendant. ) | **Civil Action No. 16-_____** |

---
## VERIFIED COMPLAINT
---

Plaintiff, Mr. Jorge L. Medina, by through undersigned counsel, alleges as follows:

### I.    INTRODUCTION

1.      This civil action is a properly raised as-applied Second Amendment challenge to the federal firearms ban (18 U.S.C. § 922(g)(1)) brought by Plaintiff, who despite a prior felony conviction in 1991 for a single false statement to a lending institution (18 U.S.C. § 1014), has become a "law-abiding, responsible citizen" entitled to use "arms in defense of hearth and home." *Schrader v. Holder*, 704 F.3d 980, 992 (D.D.C. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

### II.    JURISDICTION AND VENUE

2.      This civil action arises under the Constitution and the laws of the United States.  The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-2202.

3.      Defendant, the head of the Department of Justice, an agency of the United States and

their officers acting within their official capacities, is subject to personal jurisdiction within the

District of Columbia for purposes of the Constitution's due process clause and the District of

Columbia's long-arm statute.

4.      Venue lies in this judicial district under 28 U.S.C. § 1391 because Defendant is the

head of any agency who resides in this judicial district.

### III.      PARTIES

<u>Plaintiff</u>

5.      Plaintiff Jorge L. Medina is a natural person and citizen of California and the United

States, residing in Los Angeles County, California.  Mr. Medina intends to purchase and

possess firearms for sport and self-defense within his own home, but is prevented from doing

so by application of 18 U.S.C. § 922(g)(1) arising from a minor, non-violent felony conviction

in 1991.

<u>Defendant</u>

6.      Defendant Loretta Lynch, is sued in her capacity as the Attorney General of the United

States.  As Attorney General, Ms. Lynch is responsible for executing and administering laws,

customs, practices, and policies of the United States, and is presently enforcing the laws,

customs, practices, and policies complained of in this action.

### IV.      FACTS

<u>Mr. Medina's Background</u>

7.      Mr. Medina is a 61-year-old family man who has lived in the United States since

1968.  Mr. Medina and his wife just celebrated their 20th wedding anniversary.  He has raised

successful children, an attorney (age 39), an Iraq war veteran (age 26), an aspiring college

student (age 18), and a loving daughter who recently passed at the age of 33 due to a tragic

illness.

8.      In 1979, at the age of 24, Mr. Medina entered the real estate business.  While raising his children, he has built a thriving real estate and property management practice over the last 37 years.

9.      His company, Tropical Realty, Inc., employs six W-2 employees, more than a dozen (1099) independent contractors (as property managers), and has approximately 800 units under management.  Most of Mr. Medina's employees have been with him for years with full benefits, to include in some instances, payment of college tuition for their children.

10.     M & M Property Management Company, a division of Mr. Medina's company Tropical Realty, Inc., also has very a robust practice.  *See http://propertymm.com/index.php*. For First Pacific Financial, a client since 1998, Mr. Medina manages 90% of their real estate holdings, ten buildings with a value in excess of $30,000,000.

11.     Mr. Medina, as a self-made multi-millionaire, gives back to the community.  He engages in philanthropic and charitable work with several organizations.  With a son having served in combat with the U.S. military, Mr. Medina takes an active role in veteran's organizations, such as Wounded Heroes of America.  With Wounded Heroes, for example, he has contributed financial and other support to more than 200 children whose parents have fallen or who have been wounded in action.

12.     Despite his personal, professional, and charitable accomplishments, Mr. Medina made a mistake 25 years ago.  Facing a financial crisis for his young family with his fledgling business, he made a false statement on two mortgage refinance applications.  He adjusted his gross income on his tax return for the applications in order to qualify.  His single 1991 felony conviction for this act has led to a federal firearms ban.

Federal Firearms Ban under 18 U.S.C. § 922(g)(1)

13.     Title 18 U.S.C. § 922(g)(1) prohibits the possession of firearms by any person

convicted of "a crime punishable for a term exceeding one year."  Violation of this provision

is a felony criminal offense punishable by a fine and imprisonment of up to ten years.  *See* 18

U.S.C. § 924(a)(2).

14.     Title 18 U.S.C. § 922(d)(1) prohibits anyone from transferring firearms or ammunition

to anyone whom the transferor has reason to know was convicted of "a crime punishable by

imprisonment for a term exceeding one year."  Violation of this provision is a felony criminal

offense punishable by a fine and imprisonment of up to ten years.  *See* 18 U.S.C. § 924(a)(2).

15.     All firearms purchasers within the United States who do not possess a Federal

Firearms License, meaning, virtually all ordinary civilian consumers of firearms, must

complete "Form 4473, Firearms Transaction Record Part 1 – Over-The-Counter,"

administered, in order to purchase a firearm.  27 C.F.R. § 478.124.  Question 11(c) on Form

4473 asks:

> Have you ever been convicted in any court of a felony, or any other crime, for
> which the judge could have imprisoned you for more than one year, even if you
> received a shorter sentencing including probation?

16.     Firearms dealers are not permitted to sell firearms to anyone who answers "yes" to this

question.

Circumstances of the Federal Firearms Ban

17.     On June 14, 1990, under financial distress, Mr. Medina made a serious lapse of

judgment.

18.     Mr. Medina made a false statement on two loan applications with First Federal Bank

of California, 401 Wilshire Boulevard, Santa Monica, California 90401.  This false statement

was the inflation of his gross income on his 1988 U.S. Form 1040 Individual Income Tax

Return from $60,215 to $341,835.  Through the income inflation, he sought to increase his income to debt ratio in order to qualify for the loans.

19.    Mr. Medina received approximately $30,000 from the refinance, and paid the loans in full within six months.  He was never late on a payment.

20.    This false statement was registered by the bank, and on June 19, 1990 it filed a Criminal Referral Form.  This Form likewise reflected that it did not incur a loss on the loans to Mr. Medina, and that it had no material impact on the institution.

21.    On November 20, 1990 the Federal Bureau of Investigation interviewed Mr. Medina in connection with this matter.  He waived his *Miranda* rights and provided a sworn statement to the special agents.  He admitted that he falsified his loan applications, knowing that it was wrong, based on financial difficulties he had experienced at that time.  In June 1991, a Grand Jury in the U.S. District Court for the Central District of California swore a two-count indictment against Mr. Medina.

22.    On November 12, 1991 Mr. Medina entered a guilty plea to a single violation (Count 2) of 18 U.S.C. § 1014 (false statement to a lending institution).  *U.S. v. Medina*, Case No. 91-cr-758 (D.D.C. 1991) (count one was dismissed).

23.    A violation of 18 U.S.C. § 1014 carries a potential term of punishment in excess of one year, and as such, a federal firearms ban would apply under 18 U.S.C. 922(g)(1) upon conviction.

24.    At the sentencing proceeding on December 19, 1991, both the United States Probation Office and the U.S. Attorney concurred that Mr. Medina had accepted responsibility for his actions and that he should not be incarcerated.  The court sentenced Mr. Medina to probation for a period of three years, home detention for a period of sixty days, a $10,000 fine, and a $50.00 special assessment.

25.     After having served one year of probation, on March 29, 1993 the Court granted Mr.

Medina's motion for the early termination of probation on the recommendation of the U.S.

Attorney, the U.S. Probation Officer, and letters in support from members of the community,

which included fellow licensed real estate agents, bankers, and lawyers.  By February 18,

1993, Mr. Medina had also fully satisfied the $10,000 money judgment against him.  At all

times after 1991, Mr. Medina has been a law-abiding citizen and contributing member of

society with the exception of a minor Wyoming game and fish violation in 1996.

<u>The Minor Wyoming Game and Fish Violation</u>

26.     In the mid-1990s Mr. Medina purchased into a limited partnership in Flying "X"

Ranch at 799 Halleck Canyon Road, Wheatland, Wyoming and also purchased approximately

420 acres of land adjacent to the Flying "X" Ranch.

27.     Mr. Medina would hunt game in Wyoming using either a bow or an antique, black-

powered muzzle-loaded replica,[1] and all times fully intended to comply with Wyoming's

game and fish licensing requirements.

28.     Mr. Medina stayed in a trailer at the Flying "X" Ranch during the hunting season.  In

1993, Mr. Medina properly applied for, and used, a non-resident hunting license.

29.     That same year, a local resident told him that by owning property in the state at Flying

"X" Ranch (and the adjacent acreage) and having a mailing address there, Mr. Medina was

entitled to resident hunting status.

30.      Mr. Medina and this resident were not aware of a recent statutory change in Wyoming

for resident and non-resident hunting licenses.  A 1989 Act by the Wyoming Legislature

---

[1] Federal law does not prohibit a convicted felon from possession an antique firearm or replica
of an antique firearm if it is not designed or redesigned for using rimfire or conventional
center fire fixed ammunition (i.e. it must be designed to use black power or black power
subsitute for a single load).  *See* 18 U.S.C. § 921(a)(3), (a)(16).

"relating to game and fish hunting . . . clarif[ied] that having a Wyoming address is not sufficient proof of residence" for a resident license. *See* Gen. Session (1989), House Bill 190, An Act to Amend W.S. 23-1-102(a)(ix) *et al.*, by creating a new subsection (b) and 23-3-403(b), 1989 Wy. HB 190, 1989 Wy. ALS 24 (1989).

31.     Based on this conversation, and ignorant of the 1989 enactment, Mr. Medina applied for and obtained a Wyoming resident hunting license for both elk and antelope in 1994 and for antelope in 1995.  By obtaining these licenses Mr. Medina was unknowingly in violation of W.S. 23-3-403(b) that made it a class five misdemeanor to obtain a residency hunting license when Wyoming was not the applicant's domicile.

32.     Sometime in 1995 Mr. Medina learned that he did not, in fact, qualify for a resident license in Wyoming despite his property ownership and temporary residency at Flying "X" Ranch.  Upon this awareness, Mr. Medina ceased hunting in Wyoming on the resident license.

33.     In 1996 Mr. Medina returned to obtaining non-resident licenses in Wyoming.

34.     On October 4, 1996 a criminal information was filed against Mr. Medina for obtaining resident hunting licenses in 1994 and 1995.

35.     Mr. Medina possessed a lack of legal intent to violate any laws relating to game and fish hunting, and retained legal counsel, Rex E. Johnson, Esq., of Sherard, Sherard & Johnson in Wheatland, Wyoming to defend the charges.

36.     Mr. Medina's counsel advised him that pleading guilty to the criminal information would be in his best interest since the travel and attorney's fees would likely far exceed any fine imposed by the court.

37.     On October 25, 1996 Mr. Medina pled guilty to three class five misdemeanors pertaining to the resident licenses obtained in 1994 and 1995.  *Wyoming v. Medina*, Dkt. No. Cr 9610-0001, Entry of Plea, (Justice Court, Platte County) (filed Nov. 5, 1996) (three counts

of violating WY Stat § 23-3-403 (1989)).

38.     On November 5, 1996, the court adopted a stipulated sentence, an eight-year hunting license revocation, a $2,500 fine, and a $20.00 special assessment.

No Risk to Public Safety

39.     Since both the 1991 felony conviction for making a false statement to First Federal Bank of California on a loan application and the 1996 Wyoming game and fish (class 5 misdemeanor) violations, Mr. Medina has been a responsible, law abiding citizen.

40.     Mr. Medina's responsible, law abiding conduct has been recognized and affirmed by California's Department of Real Estate, the lending institution involved in the 1991 false statement, and by the Government of Canada in 2009:

   a.     *No Risk to Public Safety Recognized by California's Department of Real Estate.*  On April 21, 1993, California's real estate licensing board convened a hearing to determine whether Mr. Medina's license should be revoked or restricted based on the false statement to First Federal Bank.  (Case No. H-25258).  Based on Mr. Medina's successful early termination of probation and letters in support submitted by the Assistant U.S. Attorneys, the U.S. Probation Office, and members of the community, the California state board did not revoke or restrict Mr. Medina's real estate license.  These letters, for example, provided the following:

      i. *Department of Justice Letter in Support*:  On November 3, 1992 the United States Attorney (Terree A. Bowers) and Assistant United States Attorney (Bruce Riordan) for the Central District of California wrote in support of Mr. Medina's petition to the Department of Real Estate:

> ["F]or the Board's consideration, we offer the opinion, that, in the government's point of view, Mr. Medina did forthrightly accept responsibility for his crime. Moreover, he made all the appropriate payments in order to insure that no actual

8

loss occurred to the victim-lender as a result of his actions.  Finally, Mr. Medina
was cooperative throughout the investigation and prosecution."

   ii. *U.S. Probation Officer Support*:  On November 20, 1992, U.S. Probation

Officer Victor Lysiansky also wrote that he has "no hesitation in recommending that the

Department of Real Estate consider his application for a Real Estate License in a favorable

light.  I believe he would be an asset to his profession, as well as to the community at large."

This is based on his "demonstrated stability and positive responses in other areas, including

his concern for his family, employment situations, and service to others."

   b. *No Risk to Public Safety Recognized by Victim Lending Institution*.  On

September 27, 2005 First Federal Bank of California (the lending institution that received the

false loan application in 1991) extended a $1,000,000 home equity line of credit to Mr.

Medina.  At that time, First Federal Bank purchased Del Amo Savings Bank, where Mr.

Medina had been an account holder with an excellent banking relationship.  Aware of the

1991 felony conviction, the upper management at First Federal Savings evaluated Mr.

Medina's account history and banking relationship with Del Amo Savings Bank, and

extended him the $1,000,000 line of credit.  First Federal Bank of California and Mr. Medina

continued a successful banking relationship from 2005 until their closure in December 18,

2009.

   c. *No Risk to Public Safety Recognized by the Canadian Government*.  On July 3,

2009 Mr. Medina filed an application for criminal rehabilitation under subsection 36(3)(c) of

the Canadian Immigration and Refugee Protection Act to remove a bar to inadmissibility

arising from his 1991 felony conviction.  (*See* Canada, Border Crossing Services, File No.

D080500071, Approval for Rehabilitation, dated July 23, 2009).  On July 23, 2009 the

Government of Canada determined that Mr. Medina had been indefinitely "approved for

Rehabilitation," removed his bar to inadmissibility, and gave him a permit for border crossings.

41.     Mr. Medina, prior to the 1991 felony conviction, and at all times after, has been a valuable member of the community by committing his personal time to charitable work, providing significant financial and other support to charitable organizations, such as the Wounded Warriors of America, and contributing to the livelihood of his employees and their families.

Scientific Research:  NIJ Study on White Collar Offenses

42.     Peer-reviewed, criminological, Department of Justice-commissioned research illustrates that the motivation behind Mr. Medina's false statement, similar to other one-time felons, is an aberration in an otherwise law abiding life.

43.     In 1993, the National Institute of Justice published a study on "White Collar Crime and Criminal Careers" that examined the criminal careers of approximately 1,000 white collar offenders within the federal system, to include those for false claims and false statement convictions.  Wiesburd, D., et al., "White Collar Crime and Criminal Careers, NCJ 145143, *available at https://www.ncjrs.gov/App/publications/Abstract.aspx?id=145143* (last accessed August 21, 2016) (hereinafter "NIJ Study").

44.     The NIJ Study found that there are two main offender categories for white collar felons:  "one-shot offenders" and "repeat offenders."  NIJ Study at pgs. 4-6.  "Though criminals in both [one-shot and repeat offenders] both intentionally break the law, they generally do not fit common stereotypes of criminality.  [One-shot offender's] crimes appear as an aberration in what is otherwise a conventional, stable, and law-abiding life."  NIJ Study at pgs. 4-5.

45.     One shot offenders fall within two distinct sub-categories:  "crisis responders" and

opportunity takers."  NIJ Study at pg. 5.  "We term one such group <u>crisis responders</u>, since the

[Pre-Sentence Reports] indicate that these criminals are reacting to some form of financial or

personal distress when they decide to participate in criminality.  Most fit traditional middle-to-

upper class portraits of social stability, although some are from less established social

positions."  NIJ Study at pg. 5.

46.     The "crisis responders  . . . appear to be reacting to some form of financial distress

when they decide to participate in criminality."  NIJ Study at pg. 31 (internal citations

omitted).  The criminal acts do appear anomalous in the offenders' social records, and the fact

that these offenders do not come to the attention of criminal justice agents (at least as

indicated by arrests) in the ten years or more that follow this event reinforces their own

accounts."  NIJ Study at pg. 32.  "These people [crisis responders or opportunity takers] . . .

are not committed to deviant behavior.  Indeed, they evidence a high degree of stability in

both their professional and personal lives.  Such offenders may be likely to be strongly

impacted by the process of punishment."  NIJ Study at 70 (internal citations omitted).

47.     For one shot offenders, "[t]he pass across boundaries of criminality because of some

real life crisis, or some special criminal opportunity.  Besides these indicators of criminality,

their lives are not very different from law abiding citizens."  NIJ Study at pg. 50.

## V.     EXHAUSTION & INJURY

48.     There is no administrative remedy available to Mr. Medina.

49.     18 U.S.C. § 925(c) does provide that a person who is prohibited from possessing a

firearm "may make an application" to the Attorney General for relief from the disabilities

imposed by Federal laws."  Relief from a federal firearms ban may be granted by the Attorney

General where it is established "that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c).

50. Since 1992, Congress removed funding for the review of any administrative petitions filed under 18 U.S.C. § 925(c). This suspension of statutorily created rights constitutes a *de facto* exhaustion of administrative remedies. *Schrader*, 704 F.3d at 982-83 ("[S]ince 1992, Congress has repeatedly barred the Attorney General from using appropriated funds to investigate or act upon relief applications, leaving the provision inoperative.") (internal quotation marks and citations omitted).

51. The federal firearms ban as applied to Mr. Medina by 18 U.S.C. § 922(g)(1) injures, and infringes, on his right to keep and bear arms under the Second Amendment to protect hearth and home.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

*INDIVIDUALIZED, AS-APPLIED CLAIM FOR RELIEF*
*RIGHT TO KEEP AND BEAR ARMS, U.S. CONST. AMEND II*

52. Mr. Medina repeats and realleges the allegations contained in the preceding paragraphs above, inclusive.

53. "Without the relief authorized by [18 U.S.C.] section 925(c), the federal firearms ban will remain vulnerable to a properly raised as-applied constitutional challenge brought by an individual, who, despite a prior conviction, has become a "law-abiding, responsible citizen" entitled to use "arms in defense of hearth and home." *Schrader*, 704 F.3d at 992 (quoting *Heller*, 554 U.S. at 635).

54.     Mr. Medina, despite a prior felony conviction, is a responsible, law-abiding American citizen.  He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than the average, law-abiding responsible citizen.  Mr. Medina is unlikely to act in a manner dangerous to public safety, and his possession of firearms would not be contrary to the public interest.

55.     On account of Mr. Medina's unique personal circumstances, including but not limited to the nature of the non-violent felony conviction, the passage of time since the conviction, Mr. Medina's generally law-abiding record for more than twenty years, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose, it is unconstitutional to apply against Mr. Medina, personally, the firearms prohibition of 18 U.S.C. § 922(g)(1), on account of his single non-violent felony conviction.

56.     Mr. Medina, despite a prior conviction, has become a law-abiding citizen entitled to use arms in defense of hearth and home.  *See Schrader*, 704 F.3d at 992; *Heller*, 554 U.S. at 635.

## SECOND CAUSE OF ACTION

*DECLARATORY JUDGMENT ACT*
*28 U.S.C. § 2201*

57.     Mr. Medina repeats and realleges the allegations contained in the proceedings paragraphs above, inclusive.

58.     Mr. Medina is entitled to a declaration of his rights, namely, a declaration that 18 U.S.C. § 922(g)(1) cannot be applied against Jorge Medina on account of his 1991 felony conviction for 18 U.S.C. § 1014 (false statement to a lending institution) as it violates his rights to keep and bear arms under the Second Amendment of the United States Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Medina hereby prays for relief as follows:

a.      A preliminary court order for a speedy hearing on the declaratory-judgment action under Rule 57 of the Federal Rules of Civil Procedure;

b.      A declaration that 18 U.S.C. § 922(g)(1) cannot be applied against Jorge Medina on account of his 1991 felony conviction for 18 U.S.C. § 1014 (false statement to a lending institution);

c.      A declaration that 18 U.S.C. § 922(g)(1) as applied to Jorge Medina, on account of his 1991 felony conviction for a false statement to a lending institution, violates the Second Amendment of the United States Constitution;

d.      An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. §§ 922, 924 against Jorge Medina on the basis of his 1991 felony conviction under 18 U.S.C. § 1014 (false statement to a lending institution);

e.      That the Court provide further relief as it deems appropriate, just, and equitable; and

f.      That the Court grant reasonable attorney's fees, expenses and costs of court to Mr. Medina, pursuant to the Equal Access to Justice Act or any other applicable provision, to include 28 U.S.C. 2412(d).

Plaintiff demands a jury trial on any issue so triable of right by a jury.

DATED:  August 22, 2016
        New York, New York

                                        Respectfully submitted,


                                        //s//  *Jason D. Wright*
                                        Jason D. Wright, Esq.
                                        DC Bar #1029983
                                        Wright Law Firm
                                        40 Fulton Street - 23rd Floor
                                        New York, New York 10038
                                        Direct:  212-285-8000 x. 6365
                                        Mobile:  202-578-0260
                                        Fax:  917-677-8577
                                        E-mail: jwright@jasonwrightesq.com

                                        *Counsel for Plaintiff, Mr. Jorge Medina*


STATE OF CALIFORNIA, COUNTY OF _____ ss:

I, Jorge Luis Medina, am the Plaintiff in this civil action.  I have read the foregoing complaint and know the contents thereof.  I verify under penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint are true and correct to the best of my knowledge, belief, and recollection.

Subscribed and Sworn to
Before me on:

_____                      _____
                                             Jorge L. Medina
                                             Plaintiff
                                             14167 S. Hawthorne Boulevard
_____                      Hawthorne, California 90250
        Notary Public

15

DATED:   August 22, 2016
         New York, New York

Respectfully submitted,

//s//  *Jason D. Wright*
Jason D. Wright, Esq.
DC Bar #1029983
Wright Law Firm
40 Fulton Street - 23rd Floor
New York, New York 10038
Direct:  212-285-8000 x. 6365
Mobile:  202-578-0260
Fax:  917-677-8577
E-mail: jwright@jasonwrightesq.com

*Counsel for Plaintiff, Mr. Jorge Medina*

STATE OF CALIFORNIA, COUNTY OF _Los Angeles_ ss:

I, Jorge Luis Medina, am the Plaintiff in this civil action.  I have read the foregoing complaint
and know the contents thereof.  I verify under penalty of perjury under the laws of the United
States that the factual statements in this Verified Complaint are true and correct to the best of
my knowledge, belief, and recollection.

Subscribed and Sworn to
Before me on:

_____

_____
Notary Public

Jorge L. Medina
Plaintiff
14167 S. Hawthorne Boulevard
Hawthorne, California 90250

ROY'EL A. MENGISTE
Commission # 2013156
Notary Public - California
Los Angeles County
My Comm. Expires Mar 18, 2017

15