**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JORGE L. MEDINA**, |
| Plaintiffs, |
| v. |
| **JEFFERSON B. SESSIONS, III,**[1] *in his official capacity as Attorney General of the United States*, |
| Defendants. |

Case No. 16-cv-01718 (CRC)

**MEMORANDUM OPINION**

Due to a decades-old felony conviction for making a false statement on a bank loan application, Plaintiff Jorge Medina, a Los Angeles area small business owner, is barred by federal law from ever possessing a firearm. See 18 U.S.C. § 922(g)(1). Medina contends that this ban violates the Second Amendment as applied to him because he has been a responsible and largely law-abiding citizen in the 25-plus years since his conviction. While the Court has no cause to doubt Medina's rehabilitation, it finds little support for his as-applied challenge in the relevant Second Amendment precedent. The Court will therefore grant the government's motion to dismiss Medina's complaint.

**I.    Background**

Jorge Medina is a longtime resident of the Los Angeles area. Pl.'s Compl. ¶ 5. In 1990, Medina made a false statement on two loan applications to a local bank, inflating his income five-fold in order to meet the qualification standards. Id. ¶¶ 12, 17–19. Medina fessed up to the

---

[1] Attorney General Sessions, as former Attorney General Lynch's successor, has been automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

falsifications upon being questioned by the FBI and in November 1991 pled guilty to one count of making a false statement to a federally-insured financial institution in violation of 18 U.S.C. § 1014. Id. ¶¶ 21–22. Medina was sentenced to sixty days of home confinement, a $10,000 fine, and three years of probation (which was terminated early). Id. ¶ 24. Despite the relatively light sentence, Medina's conviction disqualified him from possessing a gun because 18 U.S.C. § 922(g)(1) prohibits firearm possession by any person convicted of "a crime punishable by a term exceeding one year" and section 1014 carried a 30-year maximum sentence. Id. ¶ 23.

Medina attests to being a law-abiding citizen since his 1991 conviction, with one exception. In the mid-1990s, Medina purchased a partnership in a hunting ranch in Wyoming, where he occasionally hunted game.[2] Id. ¶ 27. He later applied for and obtained a series of Wyoming resident hunting licenses. Id. ¶ 31. On the applications, Medina listed the address of the ranch. Id. But that was not sufficient under Wyoming law to establish individual residency for the purpose of resident hunting licenses. Id. ¶ 20. Medina claims he was unaware of the law. Id. ¶ 32–33. In any case, after the authorities learned of the issue and filed a criminal information against Medina, he pled guilty to three class-five misdemeanors covering each license he had obtained. Id. ¶¶ 33, 37; see Wyo. Stat. § 23-3-403(b). He was given a $2,500 fine and his hunting privileges were revoked for eight years. Id. ¶ 38.

Medina filed this suit in August 2016. He contends that the federal felon-in-possession ban violates the Second Amendment as applied to him because he has led a responsible and law-abiding life since his convictions. The complaint thus seeks an order declaring section 922(g)(1) unconstitutional as applied and an injunction barring its enforcement against Medina on the basis

---

[2] Medina claims to have hunted with a bow and a replica firearm, which are excluded from section 922(g)(1)'s general felon-in-possession ban. See 18 U.S.C. § 921(a)(3).

2

of his 1991 felony conviction. The government has moved to dismiss Medina's complaint under Rules 12(b)(1) and 12(b)(6). It argues first that Medina lacks standing, and thus the Court lacks subject matter jurisdiction, because California's firearm statute erects an independent bar to Medina's ability to possess a gun. And on the merits, the government submits that section 922(g)(1) passes constitutional muster both as a categorical ban against possession of firearms by convicted felons and as applied to Medina's particular circumstances. The Court held a hearing on the motion on May 26, 2017.

**II.     Legal Standards**

Because "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute," Gunn v. Minton, 133 S.Ct. 1059, 1064 (2013) (quotation marks omitted), they have "an affirmative obligation to consider whether the constitutional and statutory authority exist for [them] to hear each dispute" brought before them, James Madison Ltd. ex rel. Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quotation marks omitted). If the "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"[D]efect[s] of standing" constitute "defect[s] in subject matter jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). The "plaintiff bears the burden of . . . establishing the elements of standing," and each element "'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of standing] that is plausible on its face." Id. (quoting

3

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (alterations in original). "[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, [will] not suffice," id. (quoting Iqbal, 556 U.S. at 678) (second alteration in original), and the Court need not "assume the truth of legal conclusions" nor must it "'accept inferences that are unsupported by the facts set out in the complaint,'" id. (quoting Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 732 (D.C. Cir. 2007)).

To survive a 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court "accept[s] as true all of the allegations contained in [the] complaint," disregarding "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." Id. Then, the Court examines the remaining "factual content [to determine if it may] draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Analysis

#### A. Whether Medina has standing to bring his claim in federal court

The Supreme Court has established that the constitutional requirement of standing involves three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560–61 (internal citation and footnote omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements. . . . At the pleading stage, general

4

factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." Id. at 561 (internal citations omitted).

The government challenges Medina's standing on both traceability and redressability grounds. Medina's alleged harm is not *traceable* to section 922(g)(1), the government contends, because California law independently precludes him from owning, possessing, or purchasing a firearm. And the government argues that Medina's alleged injury is not *redressable* because even if the Court were to hold section 922(g)(1) unconstitutional as applied to him, California law would still prevent him from obtaining a firearm and his injury would persist. Def.'s MTD 9–10. In relevant part, the California penal code states that "[a]ny person who has been convicted of . . . a felony under the laws of the United States, the State of California, or any other state . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." Cal. Penal Code § 29800(a)(1).

The flaw in the government's argument, however, is that section 922(g) sweeps more broadly than its California counterpart. California law effectively prevents Medina from purchasing a firearm in any state (while he is a California resident) and possessing one in California. But it does not stop Medina from *possessing* a firearm in another state, because California courts lack the authority to penalize conduct that takes place wholly outside the state's borders. See, e.g., People v. Betts, 103 P.3d 883, 887 (Cal. 2005) (explaining that there must be a territorial nexus to California, such as a significant preparatory act or intended harm inside the state, for California courts to have jurisdiction to enforce criminal laws). In states that do not have local statutes preventing felons from possessing firearms, only the federal felon-in-possession ban prevents Medina from firearm possession. Therefore, if the federal statute were

5

to no longer apply, Medina could lawfully possess a firearm in certain states outside of California.

Medina's complaint vaguely suggested a desire to use a firearm outside of California. See Pl.'s Opp'n MTD ("Opp'n") 8 ("The removal of the federal felon-in-possession ban would, therefore, permit Mr. Medina to possess a firearm in some states, other than California, where he retains property."). At the invitation of the Court, see July 19, 2017 Minute Order, Medina filed a declaration confirming his intention to possess a firearm for "lawful recreational purpose[s], such as target shooting and hunting." Declaration of Jorge L. Medina ("Medina Decl.") ¶ 1. He also specified a state—New Mexico—where he currently owns residential property and could lawfully possess a gun. Id. Considering his history of recreational hunting outside of California, Medina's sworn intentions—which the Court must accept as true at the motion-to-dismiss stage—are sufficient to identify a particularized and non-conjectural injury that is traceable to section 922(g)(1) and that could be redressed by its invalidation. See Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ." (internal citation omitted)). Accordingly, Medina has established his standing to bring this suit, and jurisdiction is proper.

B.  Whether Medina has stated a viable claim for relief

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. At the core of this right, the Supreme Court has said, is the "right of law-abiding responsible citizens to use arms in defense of home and hearth." District of Columbia v. Heller ("Heller I"), 554 U.S. 570, 635 (2008). Yet the Second Amendment right is "not a right

6

to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626.

As noted above, federal law forbids convicted felons from possessing a firearm. 18 U.S.C. § 922(g)(1). The Supreme Court, in its two key decisions on the Second Amendment, was clear that it had no intention of "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons[.]" Heller I, 554 U.S. at 626; see also McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) (plurality) ("We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill'. . . We repeat those assurances here." (quoting Heller I, 554 U.S. at 626)). Unsurprisingly given this language, since Heller I the Courts of Appeals have unanimously upheld the constitutionality of section 922(g)(1) against facial attacks. Schrader v. Holder, 704 F.3d 980, 989 (D.C. Cir. 2013); see also United States v. Bogle, 717 F.3d 281, 282 n.1 (2th Cir. 2013) (per curiam) (listing cases).

With no route to a facial challenge to section 922(g)(1), Medina attempts to mount an as-applied challenge. Compl. ¶ 1. "Unlike a facial challenge, an as-applied challenge does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." Binderup v. Att'y General, 836 F.3d 336, 345 (3d Cir. 2016) (en banc) (quotation marks omitted), *cert. denied*, 137 S. Ct. 2323 (2017). The D.C. Circuit has not squarely addressed whether such challenges are available although it has suggested in dicta that they are, as will be discussed below. See Schrader, 704 F.3d at 991.

The other Courts of Appeals have divided on the permissibility of such challenges. Five circuits have held that section 922(g)(1) is constitutional as applied to all felons. See Hamilton

7

v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017) ("[W]e simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment[.]"); United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010) (recognizing that "criminal prohibitions on felons (violent or nonviolent) possessing firearms [do] not violate" the Second Amendment); United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010) ("[F]elons are categorically different from the individuals who have a fundamental right to bear arms[.]"); In re United States, 578 F.3d 1195, 1200 (10th Cir. 2009) ("We have already rejected the notion that Heller mandates an individualized inquiry concerning felons pursuant to § 922(g)(1)."); United States v. Rozier, 598 F.3d 768, 771 (11th Cir. 2010) ("[S]tatutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment.").[3]

Two circuit courts have allowed as-applied challenges in theory, though neither has ever granted one by a felon. See United States v. Williams, 616 F.3d 685, 693 (7th Cir. 2010) ("[W]e recognize that § 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent[.]"); United States v. Woolsey, 759 F.3d 905, 909 (8th Cir. 2014) (recognizing that "the Eighth Circuit has left open the possibility that a person could bring a successful as-applied challenge to § 922(g)(1)"). While the Third Circuit has allowed such challenges for misdemeanants, it has indicated that a felon would bear an "extraordinarily high—and perhaps even insurmountable" burden in making

---

[3] The Sixth Circuit also appears to subscribe to this position. While its case law is not perfectly clear, a panel has stated that it has "affirmed that prohibitions on felon possession of firearms do not violate the Second Amendment." United States v. Carey, 602 F.3d 738, 741 (6th Cir. 2010); see also id. ("Congress's prohibition on felon possession of firearms is constitutional[.]"). At least one other circuit has interpreted this language as upholding a felon possession ban in all circumstances. Baer v. Lynch, 636 F. App'x 695, 697 n.2 (7th Cir. 2016).

8

such a challenge. Binderup, 836 F.3d at 353 n.6 (plurality); see also id. at 380 (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgments) (rejecting all as-applied challenges). The First Circuit, while not completely foreclosing the possibility of an as-applied challenge, has expressed deep skepticism about them. United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011) (recognizing the "serious problems of administration, consistency, and fair warning" that such a regime of as-applied challenges would create).

The D.C. Circuit, like its sister circuits, has opined on this subject before. In Schrader, the Circuit decided a claim that section 922(g)(1) was unconstitutional as applied to a particular class of offenders—common-law misdemeanants convicted of offenses that carried no upper limits on the permissible term of imprisonment and thus qualified for the federal felon-in-possession ban—and upheld the district court's Rule 12(b)(6) dismissal, thereby affirming prohibitions on firearm possession by convicted offenders. 704 F.3d at 988. The court explained that the statute's principal purpose of "curb[ing] crime" was important and the categorical ban was substantially related to this objective as "individuals with prior criminal convictions for felonies or domestic violence misdemeanors can . . . pose a heightened risk of future armed violence." Id. at 989–90 (internal citation and quotation marks omitted).

The decision in Schrader would obviously preclude Medina's claim if not for the court's passing commentary on the question of a potential *individual as-applied* challenge. Responding to the argument "that the statute is invalid as applied to Schrader" himself, the court noted that "[w]ere this argument properly before us, Heller might well dictate a different outcome." Schrader, 704 F.3d at 991. But unfortunately for Schrader, there was no "need [to] wade into these waters because plaintiffs never argued in the district court that section 992(g)(1) was unconstitutional as applied to Schrader." Id. The court concluded that "the wisest course of

9

action is to leave the resolution of these difficult constitutional questions to a case where the issues are properly and fully briefed." Id. While this language in Schrader seemingly invited future as-applied challenges from individuals like Schrader, it does not conclusively resolve the question presented here, to which the Court now turns.

In determining whether Medina states a claim, the parties agree that the Court should apply the two-part test laid out in Schrader for deciding if a challenged firearms restriction warrants heightened scrutiny:

> [The Court] first ask[s] whether the activity or offender subject to the challenged regulation falls outside the Second Amendment's protections. If the answer is yes, that appears to end the matter. If the answer is no, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny.

704 F.3d at 988-89 (emphasis added). This Court concludes that under this test, Medina fails to state a claim that section 922(g)(1) is unconstitutional as applied to him. At the first step, a convicted felon like Medina falls outside the Second Amendment's protection. And even if he did not, the application of section 922(g)(1) to Medina passes intermediate scrutiny.

1. Step One: Whether the activity or offender subjected to the challenged regulation falls outside the Second Amendment's protection

The Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller I, 554 U.S. at 626. As the Supreme Court explained in Heller I, the Second Amendment "was widely understood to codify a pre-existing right, rather than to fashion a new one." Id. at 603. The Second Amendment therefore is "no different" than other amendments: just as the "First Amendment contains the freedom-of-speech that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets," the Second Amendment contains the limitations on the right as understood by the Founders. Id. at 635; see also Heller v. District of Columbia ("Heller II"), 740 F.3d 1244, 1252-

10

53 (D.C. Cir. 2011); United States v. Chester, 628 F.3d 673, 679 (4th Cir. 2010) ("[T]he scope of the Second Amendment is subject to historical limitations.").

Historical scholarship—as recounted in more detail by several Court of Appeals decisions—reveals a "common law tradition that permits restrictions [on gun ownership] directed at citizens who are not law-abiding and responsible." United States v. Bena, 664 F.3d 1180, 1183 (8th Cir. 2011); see also United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("That *some* categorical limits [on gun ownership] are proper is part of the original meaning[.]"); United States v. Rene E., 583 F.3d 8, 15 (1st Cir. 2009) (referencing the "longstanding practice of prohibiting certain classes of individuals from possessing firearms" and citing Founding-era literature).

This literature further illustrates that convicted criminals were one such class of citizens deemed not to be law-abiding and responsible. See, e.g., Binderup, 836 F.3d at 349 (plurality) ("The view that anyone who commits a serious crime loses the right to keep and bear arms dates back to our founding era."); United States v. Carpio-Leon, 701 F.3d 974, 980 (4th Cir. 2012) (referencing "the historical evidence supporting the notion that the government could disarm individuals who are not law-abiding members of the political community"); Bena, 664 F.3d at 1183; Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 200–01 (5th Cir. 2012); Skoien, 614 F.3d at 640. For instance, the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania—which the Supreme Court has identified as a "highly influential" precursor to the Second Amendment, Heller I, 554 U.S. at 604—"asserted that citizens have a right to bear arms 'unless *for crimes committed* or real danger of public injury.'" Skoien, 614 F.3d at 640 (quoting Bernard Schwartz, 2 *The Bill of*

11

*Rights: A Documentary History* 662, 665 (1971)) (emphasis added); see also Binderup, 836 F.3d at 349 (plurality).

This restriction on gun ownership by convicted criminals was not simply about future dangerousness. Rather, "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]'" and "that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" Vongxay, 594 F.3d at 1118 (citation omitted); see also Binderup, 836 F.3d at 348 (plurality) ("Several of our sister circuits endorse the 'virtuous citizen' justification for excluding felons and felon-equivalents from the Second Amendment's ambit.").

In sum, the historical evidence shows that "persons who have committed serious crimes forfeited the right to possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.'" Binderup, 836 F.3d at 349 (plurality) (citation omitted). A standard felony[4] is by all accounts a serious crime: "[w]here the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects 'grave misjudgment and maladjustment[.]'" Hamilton, 848 F.3d at 626. This is as true for non-violent felonies as for violent felonies. Theft, fraud, manufacture of illegal drugs, bribery of officials, and identity theft are all non-violent felonies that still evince a disconcerting disregard for the law and the rights of others. See id. at 726 ("Theft, fraud, and forgery are not merely errors in filing out a form or

---

[4] This case thus does not involve some sort of nominal crime that has been labeled a felony, perhaps with the purpose of triggering section 922(g)(1)'s applicability. In such a situation, a lengthy term of imprisonment for a nominal crime—two years in prison for jaywalking or leaving bubble gum on the sidewalk outside the White House, for instance—could be deemed unconstitutional if found to be disproportionate to the underlying conduct such that the crime would no longer qualify for the federal felon-in-possession ban. See Solem v. Helm, 463 U.S. 277, 290 (1983) ("[W]e hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. . . . [A] single day in prison may be unconstitutional in some circumstances.").

12

some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law."); United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004) ("Irrespective of whether his offense was violent in nature, a felon has shown a manifest disregard for the rights of others."). The crime that Medina was convicted of—knowingly making a false statement to a lending institution in order to influence a lending decision—is no exception. This crime, a variant of fraud, bears a penalty of up to 30 years in prison or $1 million in fines, a clear sign that Congress considered the crime a serious one. See 18 U.S.C. § 1014. For such a crime, the Founders would have considered Medina, like any convicted felon, an "unvirtuous citizen" unable to claim the right to bear a firearm. Thus, it seems that Medina fails at the first step: he falls outside the protections of the Second Amendment.

2. Whether the regulation meets the requisite level of scrutiny

Even assuming that Medina progresses to the second step of the test in Schrader, he still fails to state a claim. Under Schrader, the appropriate level of scrutiny here is intermediate scrutiny. The D.C. Circuit applied intermediate scrutiny to Schrader's claim because the case involved "individuals who cannot be said to be exercising the *core* of the Second Amendment right identified in Heller, i.e., 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home'" since "common-law misdemeanants as a class cannot be considered law-abiding and responsible." Schrader, 704 F.3d at 989 (quoting Heller I, 554 U.S. at 635). Medina, as a convicted felon, similarly does not qualify as "law-abiding and responsible." See Hamilton, 848 F.3d 626 ("[W]e simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment.").

Intermediate scrutiny requires the government to prove that the restriction is substantially related to an important governmental objective by showing that "the harms to be prevented by

13

the regulation are real, not merely conjectural," "that the regulation will in fact alleviate these harms in a direct and material way[,]" and that the "means chosen are not substantially broader than necessary to achieve that interest." Heller II, 801 F.3d at 272–73 (internal quotation marks and citations omitted). In considering the governmental interest, courts should not second-guess the legislature's aims in enacting the statute, but rather assess "only whether the [legislature] has drawn reasonable inferences based on substantial evidence." Id. And in evaluating the means, "the fit between the challenged regulation and the asserted objective [need only] be reasonable, not perfect[,]" and proper deference is accorded to Congress's predictive judgments. Schrader, 704 F.3d at 990.

The primary purpose of the federal felon-in-possession ban is "to keep guns out of the hands of presumptively risky people" and to "suppress[] armed violence." United States v. Yancey, 621 F.3d 681, 683-84 (7th Cir. 2010). As Schrader itself recognized, this interest in preventing crime and violence is "without doubt an important one." 704 F.3d at 990. And Congress's decision to ban gun access for those who commit serious crimes and have shown a disregard for law and the rights of others—the Founders' "unvirtuous citizens"—is sufficiently tailored to advancing the governmental interest in public safety. See Schrader, 704 F.3d at 990. As the D.C. Circuit has observed, "nonviolent offenders not only have a higher recidivism rate than the general population, but certain groups—such as property offenders—have an even higher recidivism rate than violent offenders, and a large percentage of the crimes nonviolent recidivists later commit are violent." Kaemmrling v. Lappin, 553 F.3d 669, 683 (D.C. Cir. 2008). Preventing those who have already shown a disregard for the law from obtaining a weapon that could make any future crimes more violent and even deadly is reasonably tailored to furthering the government's interest in public safety and preventing violence.

Medina retorts that the Court must focus instead on whether the felon-in-possession ban is sufficiently tailored to him on an individual level. See Compl. ¶¶ 54–56. But "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." Schrader, 704 F.3d at 991 (quoting Skoien, 614 F.3d at 641); cf. United Public Workers of Am. v. Mitchell, 330 U.S. 75, 102 (1947) (rejecting argument that Hatch Act limitations on political speech for public employees were unconstitutional as applied to industrial workers and explaining that "[w]hether there are such differences [between administrative and industrial workers] and what weight to attach to them, are all matters of detail for Congress"). And even in the case that Medina relies on, the plurality looked to whether the government's evidence that restricting "people like [the plaintiffs] (*i.e.*, people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety," not whether preventing the individual plaintiffs from owning a firearm adequately promoted public safety. Binderup, 836 F.3d at 354 (plurality). As discussed above, sufficient evidence indicates that preventing "people like" Medina—that is, those convicted of serious crimes such as felonies—from owning guns promotes public safety.

Moreover, the kind of individualized assessment regime that Medina envisions would prove a logistical and administrative nightmare for the courts. See Binderup, 836 F.3d at 409 (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgment) (a plaintiff-by-plaintiff scheme "places an extraordinary administrative burden on district courts"); Torres-Rosasio, 658 F.3d at 113 (such an approach "applied to countless variations in individual circumstances, would obviously present serious problems of administration"). Determining, as Medina urges this Court to do, whether a particular plaintiff presents a danger sufficient to restrict access to firearms "presupposes an inquiry into that [plaintiff's] background—a function

best performed by the Executive which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation." United States v. Bean, 537 U.S. 71, 77 (2002); see also S. Rep. No. 102-353, at 19 (1992) (noting the "approximately 40 man-years spent annually" by the Department of Justice on whether to restore convicts' firearms rights). Nor is this inquiry one that should be undertaken lightly: it is "a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 102-353, at 19 (1992); see also United States v. Masciandro, 638 F.3d 458, 475 (4th Cir. 2011) ("This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights.").

As importantly, such a regime would pose "serious problems" of "consistency and fair warning," which in turn raises constitutional due process concerns. See Torres-Rosasio, 658 F.3d at 113. If determining whether a specific individual fell outside the scope of section 922(g)(1) depended on "facts about himself and his background," Pl.'s Opp'n MTD 6, such as his behavior since his conviction, it would be nigh impossible for any individual to know if he fell inside or outside section 922(g)(1)'s prohibition. Because section 922(g)(1) is a criminal statute, this lack of notice could subject it to the same vagueness problems that doomed its sister provision, the residual clause in section 924(e)(2)(B). See Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) (holding the residual clause void for vagueness because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges"); see also Binderup, 836 F.3d at 411 (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgment) (warning that if courts

16

adopt a regime of plaintiff-specific as-applied challenges "it will only be a matter of time before void-for-vagueness challenges to § 922(g)(1) start to percolate").

In any event, Congress has already tried and rejected such an individualized regime. Under section 925(c), an individual who falls within the scope of section 922(g) can petition the Attorney General to restore her right to own firearms. 18 U.S.C. § 925(c). But in 1992, Congress expressly ended the appropriation for this program, citing its unworkability and high stakes. See S. Rep. No. 102-353, at 19 (1992). A House Report in a later appropriations bill that continued the de-funding warned that the regime had also proven mistake-prone: "We have learned sadly that too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms." H.R. Rep. No. 104-183, at 15 (1995). This legislative judgment as to the workability of an individualized regime is precisely the sort of "predictive judgments of Congress" that courts generally defer to. Schrader, 704 F.3d at 990. In other words, it is relevant for purposes of intermediate scrutiny that Congress has tried to apply a more narrowly-tailored regime and found it both insufficient to remedy the harm and impossible to administer. For this reason as well, Medina's envisioned case-by-case scheme is not commanded by the Second Amendment. And since section 922(g)(1) passes intermediate scrutiny as applied to convicted felons, as discussed above, Medina fails to state a claim that the statute is unconstitutional as applied to him.

**IV.    Conclusion**

Nothing in this decision is intended to call into question Medina's character or to cast doubts on his admirable conduct since his convictions. But no single decision by a Court of Appeals has upheld an as-applied challenge to section 922(g)(1) brought by a convicted felon. This Court, guided by longstanding tradition, deference to the legislature's well-supported

17

"predictive judgment," and the relevant Circuit and Supreme Court precedent, will not do so first.

For the foregoing reasons, the Court finds that Medina has failed to state a claim for relief under the Second Amendment. Accordingly, it will grant the government's motion to dismiss and direct the Clerk to close this case. An appropriate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 6, 2017